Donald P. Sullivan (SBN 191080)
Donald.Sullivan@jacksonlewis.com
**JACKSON LEWIS P.C.**
50 California Street, 9th Floor
San Francisco, CA  94111
T: (415) 394-9400

Rene E. Thorne (admitted *pro hac vice*)
René.Thorne@jacksonlewis.com
**JACKSON LEWIS P.C.**
601 Poydras Street, Suite 1400
New Orleans, LA  70130
T: (504) 208-1755

*Attorneys for All Defendants*
Amy's Kitchen, Inc., Administrative Committee of
Amy's Kitchen, Inc. 401(K) Retirement Plan, Carmelita
Lewis, Peter Wong, and Andy Berliner

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CARRILLO and ENRIQUE CASTILLO and JENNIFER PETRI, individually and as a representative of a Putative Class of Participants and Beneficiaries, on behalf of all similarly situated participants and beneficiaries on behalf of the Amy's Kitchen Inc. 401(k) Retirement Plan,<br><br>Plaintiffs,<br><br>vs.<br><br>AMY'S KITCHEN INC.; ADMINISTRATIVE COMMITTEE OF AMY'S KITCHEN INC. 401(K) RETIREMENT PLAN, BOTH INDIVIDUALLY AND AS THE DE FACTO ADMINISTRATIVE COMMITTEE MEMBERS; ANDY BERLINER; PETER WONG; CARMELITA A. LEWIS; AND DOES 1-50<br><br>Defendants. | Case No. 4:23-cv-01359-RFL<br><br>**DEFENDANTS' NOTICE OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND TO STRIKE JURY DEMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      June 18, 2024<br>Time:      1:30 p.m.<br>Place:     Courtroom 15, 18th Floor<br>Judge:    Hon. Rita F. Lin<br><br>Complaint filed: March 23, 2023,<br>Amended August 14, 2023<br>Trial Date: Not set |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES INTERESTED AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on Tuesday, June 18, 2024 at 1:30 P.M., the undersigned attorneys for Defendants shall move before the Honorable Rita F. Lin, U.S.D.J. in Courtroom 15 of the U.S. District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Ave, San Francisco, California 94102, for an order dismissing Plaintiffs' First Amended Complaint ("FAC") for lack of standing under Fed. R. Civ. P. 12(b)(1), or alternatively striking the FAC's jury demand pursuant to Fed. R. Civ. P. 39(a)(2).

As to the motion to dismiss, Defendants contend Plaintiffs lack Article III standing to bring a class action alleging breach of fiduciary duty under Section 502(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with Defendants' management of a defined contribution pension plan because Plaintiffs have not alleged they invested in any of the challenged investment funds, nor do they allege plan-wide misconduct. As to the motion to strike, Defendants contend Plaintiffs are not entitled to a jury trial under ERISA.

Dated: April 15, 2023

JACKSON LEWIS P.C.
Attorneys for Defendants

By:    */s/ René E. Thorne*
          René E. Thorne

4860-5669-6502

---

1

## **TABLE OF CONTENTS**

I.      INTRODUCTION. ................................................................................................... 1

II.     FACTUAL BACKGROUND. .................................................................................. 3

            A. The Parties and the Plan. ........................................................................ 3

            B. The Plan's Investment Options. ............................................................. 3

            C. The Challenged Funds and Plaintiffs' Holdings. ................................... 4

III.    PROCEDURAL HISTORY AND PLAINTIFFS' PRIOR AND CURRENT
        ALLEGATIONS. .................................................................................................... 5

            A. Original Complaint Allegations. ............................................................ 5

            B. Defendants' Motion to Dismiss the Original Complaint ........................ 6

            C. FAC Allegations. .................................................................................... 6

IV.     STANDARD OF REVIEW. ................................................................................... 7

V.      LAW AND ARGUMENT. ...................................................................................... 9

            A. Plaintiffs Lack Standing to Challenge the Prudence of Funds in Which
            They Never Invested. ................................................................................... 9

            B.  Plaintiffs Cannot Establish Individual Injury Based on Fees Paid to
            Cetera. ...................................................................................................... 11

            C.  The Court Should Dismiss the FAC With Prejudice. ........................... 13

            D.  The Court Must Strike Plaintiffs' Jury Demand. ................................ 14

VI.     CONCLUSION. .................................................................................................... 14

Defendants' Notice of Motion to Dismiss Plaintiffs' First Amended Complaint; Memorandum
of Points And Authorities                                              Case No. 4:23-cv-01359-RFL

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

*Anderson v. Intel Corp. Inv. Policy Comm.*,
    2021 U.S. Dist. LEXIS 12496 (N.D. Cal. Jan. 21, 2021) ........................................................ 4

*Austin v. Union Bank & Trust Co.*,
    2016 U.S. Dist. LEXIS 43454 (D. Or. Feb. 19, 2016) ............................................................ 4

*Brooke v. JSC Hosp. Inv. Inc.*,
    2021 U.S. Dist. LEXIS 12474 (C.D. Cal. Jan. 22, 2021) ........................................................ 8

*Chodos v. W. Publ. Co.*,
    292 F.3d 992 (9th Cir. 2002) ................................................................................................ 13

*Davis v. Old Dominion Freight Line*,
    2023 U.S. Dist. LEXIS 157048 (M.D.N.C. Sep. 6, 2023) ..................................................... 10

*Dover v. Yangfeng Auto Interior Sys. I LLC*,
    563 F. Supp. 3d 678 (E.D. Mich. 2021) ............................................................................... 12

*In re First Am. Corp. ERISA Litig.*,
    2009 U.S. Dist. LEXIS 19262 (C.D. Cal. Feb. 9, 2009) ....................................................... 14

*Fritton v. Taylor Corp.*,
    2022 U.S. Dist. LEXIS 222996 (D. Minn. Dec. 12, 2022) .................................................... 12

*Jamison v. Bank of Am., N.A.*,
    194 F. Supp. 3d 1022 (E.D. Cal. 2016) .................................................................................. 7

*Just Enters. v. Phillips & Webster PLLC*,
    2008 U.S. Dist. LEXIS 12607 (W.D. Wash. Feb. 7, 2008) ................................................... 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................................................... 8

*Krutchen v. Ricoh USA, Inc.*,
    2023 U.S. Dist. LEXIS 68942 (E.D. Pa. Apr. 20, 2023) ...................................................... 14

*In re LinkedIn ERISA Litig.*,
    2021 U.S. Dist. LEXIS 221294 (N.D. Cal. Nov. 16, 2021) ..................................................... 9

*Locascio v. Flour Corp.*,
    2023 U.S. Dist. LEXIS 9162 (N.D. Tex. Jan. 18, 2023) ...................................................... 10

*Lopez v. Wells Fargo Bank, N.A.*,
    2016 U.S. Dist. LEXIS 144380 (C.D. Cal. Oct. 17, 2016) ..................................................... 6

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Machlan v. P&G*,
   77 F. Supp. 3d 954 (N.D. Cal. 2015) ........................................................................ 8

*Marshall v. Northrop Grumman Corp.*,
   2017 U.S. Dist. LEXIS 174204 (C.D. Cal. Jan. 30, 2017)...................................... 10

*Mohammed v. Wilson.*,
   1996 U.S. Dist. LEXIS 14374 (N.D. Cal. Sep. 27, 1996)......................................... 7

*Muir v. L3Harris Techs., Inc.*,
   2020 U.S. Dist. LEXIS 130217 (D. Ariz. Jul. 23, 2020) ....................................... 14

*In re Omnicom ERISA Litig.*,
   2021 U.S. Dist. LEXIS 144054 (S.D.N.Y. Aug. 2, 2021) ...................................... 10

*Patterson v. Morgan Stanley*,
   2019 U.S. Dist. LEXIS 174832 (S.D.N.Y. Oct. 7, 2019) ....................................... 10

*Sabana v. CoreLogic, Inc.*,
   2024 U.S. Dist. LEXIS 14565 (C.D. Cal. Jan. 26, 2024)
   ................................................................................................... 8, 9, 10, 11, 13

*Savage v. Glendale Union High Sch. Dist. No. 205*,
   343 F.3d 1036 (9th Cir. 2003).................................................................................. 8

*Singh v. Deloitte LLP*,
   2023 U.S. Dist. LEXIS 6910 (S.D.N.Y. Jan. 13, 2023)......................................... 10

*In re Sutter Health ERISA Litig.*,
   2023 U.S. Dist. LEXIS 22659 (E.D. Cal. Feb. 9, 2023) ....................................... 14

*Thole v. U.S. Bank N.A.*,
   140 S.Ct. 1615 (2020) ............................................................................................. 8

*Thomas v. Oregon Fruit Prods. Co.*,
   228 F.3d 991 (9th Cir. 2000).................................................................................. 14

*White v. Chevron Corp.*,
   2017 U.S. Dist. LEXIS 83474 (C.D. Cal. May 31, 2017)....................................... 12

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
   62 F.4th 517 (9th Cir. 2023)................................................................................... 9

**Federal Statutes**

29 U.S.C. § 1109(a) ...................................................................................................... 9

29 U.S.C. § 1132(a)(2) .................................................................................................. 9

Employee Retirement Income Security Act of 1974 .................................................... 1

iii

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 1, 7, 8, 9

Fed. R. Civ. P. 15(a)(1) ...................................................................................................... 1, 6

Fed. R. Civ. P. 39(a)(2) ................................................................................................... 1, 14

https://www.efast.dol.gov/5500search ................................................................................. 8

iv

Defendants, Amy's Kitchen, Inc. ("Amy's"), the Administrative Committee of Amy's Kitchen, Inc. 401(k) Retirement Plan ("Committee"), and the individually named defendants (collectively "Defendants"), respectfully submit this memorandum of law in support of their Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") [Dkt. No 33] with prejudice for lack of standing under Fed. R. Civ. P. 12(b)(1).  Alternatively, Defendants move to strike Plaintiffs' jury demand under Fed. R. Civ. P. 39(a)(2).

## I.        INTRODUCTION.

The FAC is Plaintiffs' second attempt to state plausible claims under the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with the management of the Amy's Kitchen 401(k) Retirement Plan ("Plan").  Their Original Complaint, filed in March 2023, was a tangled, **811-paragraph, 200-page** morass that pled no easily discernable claims.  Plaintiffs appeared to allege that: (1) Cetera Financial Group ("Cetera"), the Plan's investment advisor, and Transamerica Corporation ("Transamerica"), the Plan's recordkeeper, charged fees that were too high; (2) the Plan should have offered all of its investment options in cheaper share classes; (3) the Plan's actively managed funds were imprudent because of high fees and/or poor performance; and (4) Defendants engaged in unexplained "prohibited transactions" with Cetera and/or Transamerica.

Aside from its general incomprehensibility, the Original Complaint failed to clearly delineate a specific set of challenged investments, or explain why the service providers' fees were too high (e.g., the Original Complaint contained no examples of similarly-sized comparator plans who paid lower fees for the same services).  While the Original Complaint critiqued (in one respect or another) nearly every fund the Plan ever offered, it did *not* challenge the only two funds Plaintiffs identified as their own investments.  Defendants therefore moved to dismiss the Original Complaint for failure to state a claim [Dkt. No. 22] on various grounds, including Plaintiffs' lack of Article III standing to challenge funds in which they never invested, and the absence of any clearly delineated claim for excessive fees.  Rather than contest Defendants' motion, Plaintiffs filed the FAC as of right under Fed. R. Civ. P. 15(a)(1).

The FAC, while still unwieldy at 364 paragraphs and 90 pages (and still replete with

boilerplate filler such as case law and treatise citations), clarifies that Plaintiffs' claims are confined to the share classes and performance of only sixteen investment funds ("Challenged Funds"), which Plaintiffs delineate in paragraphs 139-214.[1]  Purged from the FAC are any substantive allegations of excessive recordkeeping fees paid to Transamerica.  The FAC also abandons the Original Complaint's suggestions that the Plan offered nearly *every* investment in the wrong share class, and/or that *every* actively managed investment was imprudent.  And while the very beginning of the FAC contains a random (and incorrect) reference to allegedly excessive fees paid to Cetera, it provides no further substance.

In sum, the only substantive allegations in the FAC (set forth in paragraphs 139-214) pertain to the Challenged Funds, which it brands as imprudent investments.  That leaves one fatal problem.  According to Plaintiffs' own allegations, none of them ever invested in any of the Challenged Funds.  Although, in some cases, courts have concluded that a plaintiff need not have invested in *every* challenged fund to have Article III standing, all courts agree that a complaint must establish the plaintiff's individual interest in at least *one*.  Alternatively, if the plaintiff has not invested in any challenged fund, she may still establish standing if she plausibly alleges some type of plan-wide injury impacting all participants, regardless of their investments (e.g., excessive recordkeeping fees).

Neither scenario applies here.  Plaintiffs have now twice alleged that their investments were limited to the Plan's target date funds and stable value fund, but those funds are *not* among the Challenged Funds.  Further, Plaintiffs chose to abandon the Original Complaint's claim for excessive recordkeeping fees.  And the Court cannot credit the FAC's empty, throw-away reference to purportedly excessive investment advisory fees as a basis to infer standing.

The Court should therefore dismiss the FAC, and it should do so *with* prejudice.  Plaintiffs have already amended once, and they amended in response to a motion to dismiss alerting them to

---

[1]     The FAC lists seventeen funds in paragraphs 139-214, but one of those funds (the Transamerica High Yield Bond Fund) is a duplicate.  *See FAC*, ¶¶ 139-144 and 146-149 (identifying the Transamerica High Yield Bond Fund as both "Fund Number One" and "Fund Number Three").

the same deficient allegations that doom the FAC.  Not only did the FAC fail to cure those deficiencies, it underscores them.  Under the circumstances, Plaintiffs are not entitled to further amendments.

Alternatively, if the Court should find Plaintiffs have standing, the Court should strike the FAC's jury demand, as there is no right to a jury trial under ERISA.

## II.    FACTUAL BACKGROUND.

### A.    *The Parties and the Plan.*

Plaintiffs are former Amy's employees.  *FAC*, ¶¶ 25-27.  Amy's is a family-owned, privately-held company based in Petaluma, California.  *Id.*, ¶ 13.  Founded by Andy and Rachel Berliner in the 1980s and named after their daughter, Amy's produces and distributes organic and vegetarian convenience and frozen foods, making it easier for people with dietary restrictions to find options that meet their needs.  *Id.*  Amy's prides itself on providing its employees with robust and comprehensive benefits, which include the Plan.

The Plan is an ERISA "defined contribution" pension plan.  *Id.*, ¶ 48.  In a defined contribution plan, participants' retirement benefits are limited to the value of their individual accounts.  *Id.*, ¶¶ 48, 53.

Amy's Board of Directors appoints members of the Committee, which is responsible for the management and operation of the Plan.  *Id.*, ¶¶ 14, 140.  The Committee's responsibilities include selecting, monitoring, and removing investment options made available to participants, a task the Committee carries out with the assistance of its investment advisor.  *Id.*, ¶¶ 20, 21, 54.  The Committee is also charged with selecting and monitoring third-party service providers such as investment advisors and recordkeepers.  *Id.*, ¶ 16.  Cetera served as the Plan's investment advisor from the beginning of the Class Period through 2021, and Transamerica served (and continues to serve) as the Plan's recordkeeper.  *Id.*, ¶¶ 20, 50.

### B.    *The Plan's Investment Options.*

The Plan offers a broad range of investment options spanning the full risk spectrum and all major asset classes.  During the Class Period, the Plan offered a suite of Vanguard target date funds

("TDFs");[2] large, mid, and small-cap domestic equity funds; international equity funds; fixed income (bond) funds; mixed asset (e.g., real estate and technology) funds; and a Transamerica stable value fund ("SVF").[3]  *FAC*, ¶¶ 25-27 (identifying the Vanguard TDFs as the Plaintiffs' investments); ¶¶ 139-214 (discussing the sixteen stock, bond, and mixed-asset funds at issue); and ¶ 25 (identifying the Transamerica SVF as a fund in which Plaintiff Carrillo invested in addition to the Vanguard TDFs).

### C.     *The Challenged Funds and Plaintiffs' Holdings.*

The Challenged Funds identified in the FAC are: (1) Transamerica High Yield Bond R4, *FAC*, ¶¶ 138, 146; (2) Transamerica Mid Cap Value Opportunities R4, *id.* ¶ 145; (3) Invesco (formerly Oppenheimer) Global A, *id.* ¶ 150; (4) Loomis Sayles Investment Grade Bond A, *id.* ¶ 156; (5) Nuveen Real Estate Secs. I, *id.* ¶ 167; (6) American Funds Washington Mutual R5 *id.* ¶ 168; (7) Calvert Equity I, *id.* ¶ 175; (8) Invesco Small Cap Growth R5, *id.* ¶ 178; (9) Neuberger Berman Socially Responsible R3, *id.* ¶ 180; (10) American Funds AMCAP R5, *id.* ¶ 188; (11) Franklin Utilities Fund Adv, *id.* ¶ 192; (12) American Funds Growth Fund of America R2E, *id.* ¶ 194; (13) Calvert Small Cap I, *id.* ¶¶ 197, 202; (14) Janus Henderson Global Technology T, *id.* ¶ 208; (15) American Century Government Bond R5, *id.* ¶ 210; and (16) Templeton Foreign Adv, *id.* ¶ 212.

Plaintiffs criticize the Committee for offering the Challenged Funds in more expensive share classes, when cheaper share classes of the same funds were available.  *See generally id.*, ¶¶ 139-214.  Plaintiffs further contend that the relative riskiness of the Challenged Funds (as measured by standard deviation, alpha, and Sharpe ratio) did not keep pace with risk metrics of

---

[2]     TDFs are multi-asset investments geared to a specific year in which the participant anticipates retiring.  Fiduciaries generally offer TDFs in five or ten-year intervals, often referred to as "vintages."  Over time, a TDF's asset allocation becomes more conservative as the participant nears and passes the target date.  *See Anderson v. Intel Corp. Inv. Policy Comm.*, 2021 U.S. Dist. LEXIS 12496, at *7-8 (N.D. Cal. Jan. 21, 2021).

[3]     A SVF is a guaranteed income investment comprised of fixed income assets (e.g., bonds or money market funds) secured by an insurance contract to guard against loss of capital or interest. *See Austin v. Union Bank & Trust Co.*, 2016 U.S. Dist. LEXIS 43454, at *3-4 (D. Or. Feb. 19, 2016).

the same market indices.  *Id.*

Yet, Plaintiffs do not allege that *they* ever invested in any of the Challenged Funds during the Class Period.  Rather, Plaintiffs identify Carrillo's only holdings as the 2045 vintage of the Vanguard TDFs and the Transamerica SVF; Castillo's only holding as the 2030 vintage of the Vanguard TDFs; and Petri's only holding as the 2035 vintage of the Vanguard TDFs.  *Id.*, ¶¶ 25-27.  These are the same, limited holdings Plaintiffs identified in the Original Complaint.  *See Original Complaint*, ¶¶ 25-26.  But the FAC does not challenge the Vanguard TDFs or the Transamerica SVF in any way.  In fact, other than to identify them as Plaintiffs' holdings, the FAC does not even *mention* the Vanguard TDFs or the Transamerica SVF.

## III.   PROCEDURAL HISTORY AND PLAINTIFFS' PRIOR AND CURRENT ALLEGATIONS.

### A.   *Original Complaint Allegations.*

The Original Complaint's stream of consciousness pleading style followed no discernable arc, and pivoted indiscriminately from topic to topic, scattering throughout random quotations from things like the Restatement of Trusts and Agency, industry articles, and internet postings.  However, it was at least clear that the Vanguard TDFs and the Transamerica SVF were *not* among the investments Plaintiffs challenged.  Rather, Plaintiffs appeared to take umbrage with most all other funds – particularly actively managed funds – for being offered in the wrong share classes, and for underperformance compared to index funds.

The Original Complaint also referenced service providers Cetera and Transamerica.  The Original Complaint's references to Cetera pertained largely to prior lawsuits or press having nothing to do with Amy's or the Plan.  *See, e.g., Original Complaint*, ¶¶ 78-80; 699-700.  Regarding Cetera's investment advisory fees, however, the Original Complaint contained a mere two sentences – in the introductory section identifying the parties, no less – alleging (without context) that Cetera received approximately $300,000.00 per year from the Plan, when it should have received no more than $42,000.00, the median fee it charged its other clients.  *See id.*, ¶¶ 17-18.

As for Transamerica, the Original Complaint suggested that a plan of Amy's size should

5

1   have paid between $44.00 and $66.00 per participant per year – although Plaintiffs advanced this

2   suggestion through the nonsensical assertion that they went out one weekend and found two

3   unidentified recordkeepers willing to service the Plan for those amounts.  *See id.*, ¶¶ 148-150.

4           Oddly, the Original Complaint did not allege what *Amy's* participants paid per annum in

5   recordkeeping fees, although paragraph 696 did contain this unintelligible assertion:  "Given

6   Amazon's cloud storage and deflation of technology costs over the past decades, Plaintiffs experts

7   contacted independent recordkeeper providers not tied to proprietary investment offerings like

8   Transamerica (Amy's Kitchen Inc. selection) and found the per quarter per head fee was $10 and

9   $15.  That means since the plan has 3,074 participants (line 4g of each 5500 for 2021 back to

10  2017), the annual cost would be four times 30742 (sic) up to four times (sic) $46,113.  Thus, the

11  flat per capita annual recordkeeper costs are between $122,968 and 184,452 dollars."  *Id.*, ¶ 696

12  (full quotation in original).

13          **B.      Defendants' Motion to Dismiss the Original Complaint.**

14          Defendants moved to dismiss the Original Complaint, leading with the argument that the

15  pleading was so incomprehensible as to be implausible, followed by the argument that Plaintiffs

16  lacked Article III standing because they never invested in any of the funds the pleading criticized

17  for being imprudent.  *See* Dkt. No. 22, ECF p. 21-23.  Defendants also pointed out that Plaintiffs'

18  allegations of excessive investment advisory fees paid to Cetera were not supported – indeed, were

19  contradicted – by the Form 5500s on which Plaintiffs based those allegations.  *See id.*, ECF p. 26-

20  27.  In response, Plaintiffs used their "one freebie" to amend as a matter of course under Fed. R.

21  Civ. P. 15(a)(1) and filed the FAC.  *See Lopez v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS

22  144380, at *8 (C.D. Cal. Oct. 17, 2016) ("Under Federal Rule of Civil Procedure 15, a plaintiff

23  essentially gets one freebie early on in a case when it comes to filing an amended complaint.").

24          **C.      FAC Allegations.**

25          Despite notice of Defendants' standing argument when they filed the FAC, Plaintiffs

26  continue to allege that their individualized interests are confined solely to the Vanguard TDFs and

27  the Transamerica SVF.  *FAC*, ¶¶ 25-27.  But again, these investments are not among the sixteen

28

Defendants' Notice of Motion to Dismiss Plaintiffs' First Amended Complaint; Memorandum
of Points And Authorities                                              Case No. 4:23-cv-01359-RFL

Challenged Funds the FAC critiques for their share class and risk metrics. *Id.*, ¶¶ 139-214. The FAC also abandons the Original Complaint's suggestion that *all* actively managed funds in the Plan were per se imprudent because of share class or underperformance.[4]

The FAC likewise abandons any allegations of excessive recordkeeping fees, completely eliminating the Original Complaint's references to what Plaintiffs believe Plan participants paid to Transamerica, or what they feel participants should have paid. Indeed, the FAC's 364 paragraphs reference Transamerica's role as recordkeeper a mere five times (down from over 100), and *not* in the context of any fees it received. *See id.*, ¶¶ 50, 54, 246, 286, 318.

In short, Plaintiffs have waived any claims that the Committee's fund selection was imprudent across-the-board, or that Plan participants paid excessive recordkeeping fees to Transamerica. *See Mohammed v. Wilson.*, 1996 U.S. Dist. LEXIS 14374, at *7 (N.D. Cal. Sep. 27, 1996) ("An amended complaint filed as a matter of course or after leave supersedes the original complaint. A plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint.") (internal citations omitted).

As for Cetera, its role is likewise substantially reduced in the FAC. With respect to fees, the FAC contains the same two, meager sentences from the Original Complaint alleging that Cetera received approximately $300,000.00 per year from the Plan, when it should have received no more than $42,000.00 – a statement Plaintiffs purport to base on the Plan's publicly-filed Form 5500s. *See id.*, ¶¶ 17-18.

Defendants again move to dismiss. Plaintiffs lack Article III standing to pursue this ERISA 502(a)(2) class action because, according to their own allegations, they have no personal stake in any of the Challenged Funds, nor have they alleged a plausible claim of plan-wide injury impacting all Plan participants regardless of their investments.

## IV.   STANDARD OF REVIEW.

A motion to dismiss for lack of standing is a challenge to a court's subject matter jurisdiction, and therefore analyzed under Rule 12(b)(1). *See, e.g., Jamison v. Bank of Am., N.A.*,

---

[4]   Incidentally, the Vanguard TDFs are index funds, and the Transamerica SVF is a cash equivalent fund. Neither are actively managed investments.

Defendants' Notice of Motion to Dismiss Plaintiffs' First Amended Complaint; Memorandum
of Points And Authorities                                    Case No. 4:23-cv-01359-RFL

1   194 F. Supp. 3d 1022, 1026 (E.D. Cal. 2016).  When a defendant makes a Rule 12(b)(1) motion,

2   the burden of establishing jurisdiction rests on the party asserting jurisdiction.  *See Kokkonen v.*

3   *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

4          To invoke the power of a federal court, a plaintiff must have standing under Article III of

5   the Constitution, which requires a plaintiff to demonstrate an injury in fact that is fairly traceable

6   to the challenged conduct and likely to be redressed by a favorable decision.  *See Sabana v.*

7   *CoreLogic, Inc.*, 2024 U.S. Dist. LEXIS 14565, at *5 (C.D. Cal. Jan. 26, 2024) (citing *Lujan v.*

8   *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Absent Article III standing, a court lacks

9   subject matter jurisdiction to hear a plaintiff's claims.  *See Machlan v. P&G*, 77 F. Supp. 3d 954,

10  958 (N.D. Cal. 2015).  This bedrock principle applies with equal force in ERISA class action

11  lawsuits.  *See Thole v. U.S. Bank N.A.,* 140 S.Ct. 1615, 1622 (2020) ("There is no ERISA exception

12  to Article III.").

13         A challenge to a plaintiff's standing "can be either facial, confining the inquiry to

14  allegations in the complaint, or factual, permitting the court to look beyond the

15  complaint." *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir.

16  2003).

17         The instant motion presents a facial attack limited to the allegations in the FAC.  First,

18  Defendants confine their arguments to the allegations in the FAC regarding which funds Plaintiffs

19  invested in.  Second, regarding alleged fees paid to Cetera, Plaintiffs' allegations derive from the

20  Plan's Form 5500s (*see id.*, ¶¶ 17-18), which the FAC refers to, relies upon, and incorporates by

21  reference.  *See id.*, ¶¶ 16, 18, 20-22, 54, 107, 130-131, 138, 182, 201, 203, 208.[5]  The Form 5500s

22  (which are publicly filed with the Department of Labor, *see* https://www.efast.dol.gov/5500search)

23  are therefore subject to judicial notice on this motion.  *See CoreLogic*, 2024 U.S. Dist. LEXIS

24  14565, at *6 (District Court may consider Form 5500s on 12(b)(1) motion to dismiss ERISA class

25  action for lack of standing); *see also Brooke v. JSC Hosp. Inv. Inc.*, 2021 U.S. Dist. LEXIS 12474,

26  
27  ___

[5]      Pertinent sections of the Form 5500s (namely the sections identifying Cetera's fees) are attached to the accompanying Declaration of René E. Throne ("Thorne Decl.") as Exhibits A-E.

28

*5 (C.D. Cal. Jan. 22, 2021) (taking judicial notice of publicly filed documents on Rule 12(b)(1) motion).

## V. LAW AND ARGUMENT.

### A. *Plaintiffs Lack Standing to Challenge the Prudence of Funds in Which They Never Invested.*

Plaintiffs purport to bring suit for Plan-wide relief on behalf of an entire class under Section 502(a)(2) of ERISA, which allows a participant to bring a civil action against ERISA fiduciaries for breach of duties set forth in Section 409. *See* 29 U.S.C. § 1132(a)(2). Section 409(a), in turn, provides that a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]" 29 U.S.C. § 1109(a).

Although Section 502(a)(2) provides a construct for bringing claims on behalf of an entire plan, Plaintiffs must still "allege and show that they *personally* have been injured." *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) (emphasis added, internal citations omitted). A plaintiff establishes injury in fact when he has suffered an invasion of a legally protected interest that is "concrete and particularized," meaning the injury must "actually exist" and "must affect the plaintiff in a personal and individual way." *CoreLogic*, 2024 U.S. Dist. LEXIS 14565, at *6 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016)).

The FAC contains no evidence from which the Court may infer that Plaintiffs themselves sustained any concrete and particularized harm. There are sixteen Challenged Funds at issue in this lawsuit, but the FAC does not allege that Plaintiffs ever invested in any of them. Rather, Plaintiffs assert that they invested only in the Vanguard TDFs and (in Carrillo's case) the Transamerica SVF. *See FAC*, ¶¶ 25-27. Not only does the FAC fail to challenge the prudence of these investments, it does not even *mention* them other than to identify them as Plaintiffs' holdings.

Several courts in this Circuit and elsewhere regularly hold that ERISA plaintiffs lack standing to challenge the prudence of funds in which they did not invest. *See, e.g., CoreLogic*, 2024 U.S. Dist. LEXIS 14565, at *9 (dismissing complaint challenging underperforming funds on standing grounds where plaintiffs never invested in funds in question); *In re LinkedIn ERISA Litig.*,

9

Defendants' Notice of Motion to Dismiss Plaintiffs' First Amended Complaint; Memorandum
of Points And Authorities                                                Case No. 4:23-cv-01359-RFL

2021 U.S. Dist. LEXIS 221294, at *11-15 (N.D. Cal. Nov. 16, 2021) ("The parties do not dispute that none of the Plaintiffs have alleged that they personally invested in [the challenged funds]….Accordingly, to the extent Plaintiffs' claims are based on offering imprudent investment options, Plaintiffs have not demonstrated Article III standing."); *Marshall v. Northrop Grumman Corp.*, 2017 U.S. Dist. LEXIS 174204, at *23 (C.D. Cal. Jan. 30, 2017) (finding no standing where plaintiffs did not allege they invested in the challenged fund).[6]

In *CoreLogic*, for example, the plaintiffs similarly brought claims of fiduciary imprudence predicated on alleged expensive share classes and underperformance of five funds. *CoreLogic*, 2024 U.S. Dist. LEXIS 14565, at *8. The District Court summarily rejected the plaintiffs' argument that they had standing to challenge the underperformance or share class of funds in which they never personally invested. *Id*. Rather, only by showing "through some theory, concrete and *individual* harm" could the plaintiffs establish Article III standing. *Id*.

The logic behind decisions such as *CoreLogic* is simple. In a defined contribution plan, a participant's benefits are determined by the value of his *individual* account. If the putative class representative never had a personal stake in any of the challenged investments, his individual account was never impacted by their alleged excessive costs or deficient performance. By extension, he will not benefit from any settlement or judgment, nor will he find himself any worse off if his case does not succeed.

So too here. Even if Plaintiffs could prove that one or more Challenged Funds were imprudent, they could not have harmed Plaintiffs' individual accounts if they were never *in* Plaintiffs' accounts. Thus, win, lose, or draw, the outcome of this case will not impact the value

---

[6] *See also e.g., Davis v. Old Dominion Freight Line*, 2023 U.S. Dist. LEXIS 157048, at *15-16 (M.D.N.C. Sep. 6, 2023) (dismissing complaint challenging share classes of given funds on standing grounds where plaintiff never invested in the funds); *Locascio v. Flour Corp.*, 2023 U.S. Dist. LEXIS 9162, at *9 (N.D. Tex. Jan. 18, 2023) (plaintiff lacked standing because she invested in none of the challenged funds and thus "pled her way out of court"); *Singh v. Deloitte LLP*, 2023 U.S. Dist. LEXIS 6910, at *9-10 (S.D.N.Y. Jan. 13, 2023) (plaintiff lacked standing because "the allegedly poor performance of those specific products could not have affected the individual account of any of the named plaintiffs"); *In re Omnicom ERISA Litig.*, 2021 U.S. Dist. LEXIS 144054, at *18 (S.D.N.Y. Aug. 2, 2021) (concluding plaintiffs lacked standing to sue for injuries caused by funds in which they did not invest); *Patterson v. Morgan Stanley*, 2019 U.S. Dist. LEXIS 174832, at *20 (S.D.N.Y. Oct. 7, 2019) (finding plaintiffs lacked standing to bring suit as to funds in which they did not invest).

of Plaintiffs' individual accounts by a single penny.   Because Plaintiffs cannot demonstrate concrete and *individual* harm, they lack standing and the Court must dismiss their class action. *See CoreLogic*, 2024 U.S. Dist. LEXIS 14565, at *8.

### B.   Plaintiffs Cannot Establish Individual Injury Based on Fees Paid to Cetera.

In the Ninth Circuit, a named plaintiff's lack of individualized interest in any challenged investment may not be fatal to Article III standing if, in the alternative, he or she can show that the fiduciaries made a plan-wide decision that injured *all* participants, regardless of their investments (e.g., a claim for excessive recordkeeping fees, which all participants with account balances pay). *See CoreLogic*, 2024 U.S. Dist. LEXIS 14565, at *8   (citations omitted).   For example, in *CoreLogic*, the plaintiff failed to establish that he personally invested in any of the disputed funds, but he also asserted a companion claim for excessive recordkeeping fees – a form of plan-wide injury. *See id*.

The District Court held that because the plaintiff could not establish standing based on his critiques of the disputed funds, his "standing therefore rises or falls on whether he can show concrete and individual harm under an excessive-fees theory." *Id.* at *9.   The District Court then went on to conclude that the plaintiff could not establish individualized injury based on this alternative theory because judicially noticeable documents reflected that he paid far less than the $40.00 per participant per year fee that his complaint alleged was reasonable. *See id*. at *12-13.

While this case no longer involves a recordkeeping claim, the factual construct of *CoreLogic* is analogous and its reasoning is directly appliable.   The FAC contains the same random two sentences from the Original Complaint (derived from the Plan's Form 5500s) alleging that Cetera received approximately $300,000.00 in investment advisory fees in each year of the Class Period, when it should have received no more than $42,640.00 – the median fee Cetera purportedly received from its other clients during the Class Period. *FAC*, ¶¶ 17-18.[7]

As in *CoreLogic*, this Court must consider the FAC's source documents – in this case, the

---

[7]   Beyond these meager two sentences, the FAC's 364 paragraphs do not elaborate on investment advisory fees, nor do Plaintiffs explain in the FAC how they calculated this $300,000.00 figure, which appears nowhere in the Form 5500s.

Form 5500s – in determining whether Plaintiffs can establish individualized injury based on this alternative theory of excessive investment advisory fees.  And as in *CoreLogic*, those source documents do not support this theory – in fact, they refute it.  Schedule C of each Form 5500 clearly confirms that Cetera's annual compensation during the Class Period was nowhere near $300,000.00:

| Plan Year | Direct Compensation Paid (Schedule C)[8] |
|-----------|-------------------------------------------|
| 2017 | $24,000.00 |
| 2018 | $32,000.00 |
| 2019 | $35,250.00 |
| 2020 | $45,000.00 |
| 2021 | $33,750.00 |

Simply put, the documents upon which Plaintiffs rely confirm the Plan paid Cetera between $24,000.00 and $45,000.00 during the Class Period.  The average *and* the median for this range is $34,000.00 – a figure *below* what Plaintiffs allege Cetera received from its other clients, and *below* what Plaintiffs contend would have been reasonable.  *See FAC*, ¶¶ 17-18 (asserting $42,640.00 was the median fee Cetera purportedly received from other clients).

When a document integral to a complaint contradicts the complaint's allegations, the document controls, not the allegations, and the allegations are not entitled to a presumption of truth on a motion to dismiss.  *See, e.g., Just Enters. v. Phillips & Webster PLLC*, 2008 U.S. Dist. LEXIS 12607, at *6 (W.D. Wash. Feb. 7, 2008).  District Courts are particularly loath to credit allegations of excessive fees if they are contradicted by judicially noticeable documents such as Form 5500s. *See White v. Chevron Corp.*, 2017 U.S. Dist. LEXIS 83474, at *48-49 (C.D. Cal. May 31, 2017); *see also Dover v. Yangfeng Auto Interior Sys. I LLC,* 563 F. Supp. 3d 678, 689 (E.D. Mich. 2021) (discrediting plaintiffs' allegation of excessive recordkeeping fees when plan's publicly filed Form 5500s contradicted plaintiffs' figures); *Fritton v. Taylor Corp.,* 2022 U.S. Dist. LEXIS 222996, at *22-23 (D. Minn. Dec. 12, 2022) (similar).

The District Court drew a similar conclusion in *CoreLogic*.  There, the District Court found

---

[8]     The last page of each exhibit to the Thorne Declaration is the Schedule C page reflecting Cetera's fees.

that the plaintiff's excessive fees claim failed to establish individualized harm because his account statements, which the court found were subject to judicial notice, contradicted the allegations in the complaint.  *See CoreLogic*, 2024 U.S. Dist. LEXIS 14565, at \*12-13.  As in *CoreLogic*, judicially noticeable documents refute any allegations of plan-wide injury derived from excessive investment advisory fees.

In sum, the FAC fails to show that Plaintiffs sustained any individualized injury through investment in any of the Challenged Funds, nor does it establish plan-wide injury through excessive investment advisory fees.  Plaintiffs therefore lack Article III standing and the Court must dismiss the FAC.

### C. The Court Should Dismiss the FAC With Prejudice.

The Court should dismiss this lawsuit with prejudice.  Plaintiffs have already amended once, and a court's discretion to deny leave to amend is "particularly broad" where the plaintiff previously amended the complaint.  *See Chodos v. W. Publ. Co.*,292 F.3d 992, 1003 (9th Cir. 2002).

Here, the FAC's deficiencies are self-inflicted harms.  The issues presented above – i.e., the absence of any challenge to the Vanguard TDFs or the Transamerica SVF, and the objective falsity of Plaintiffs' allegations regarding Cetera's fees – were raised in Defendants' motion to dismiss the Original Complaint.  Undeterred, Plaintiffs doubled-down on the same faulty allegations in the FAC.  Despite having been on notice of the deficiencies identified above since Defendants originally moved to dismiss in June 2023, Plaintiffs *chose* to confine the FAC to the Challenged Funds, which do not include Plaintiffs' identified investments; they *chose* to abandon the Original Complaint's recordkeeping claim and any allegations of across-the-board investment imprudence; and they *chose* to leave their objectively false allegations regarding Cetera's fees unchanged from the Original Complaint.

Under the circumstances, the Court should not give Plaintiffs another bite at the pleading apple.  Plaintiffs have had every opportunity to draft a plausible complaint advancing claims for which they have standing, but they failed to do so.  To provide Plaintiffs with another opportunity

to amend and force Defendants to file yet another motion to dismiss would be unduly prejudicial. *See Muir v. L3Harris Techs., Inc.*, 2020 U.S. Dist. LEXIS 130217, at *4 (D. Ariz. Jul. 23, 2020) (citing *Chodos*, 292 F.3d at 1003); *see also Krutchen v. Ricoh USA, Inc.*, 2023 U.S. Dist. LEXIS 68942, at *6 (E.D. Pa. Apr. 20, 2023) (dismissing similar ERISA plan class action with prejudice where plaintiffs had previously amended their pleading).  The Court should therefore dismiss the FAC with prejudice.

### D.    The Court Must Strike Plaintiffs' Jury Demand.

For the reasons explained above, this lawsuit should end with a dismissal of the FAC with prejudice.  However, in the event the Court concludes that one or more claims survive the pleading stage, it should, at a minimum, strike Plaintiffs' jury demand.

Pursuant to Fed. R. Civ. P. 39(a)(2), when a jury trial has been demanded, the trial on all issues so demanded must be by jury "unless[] the court, on motion or on its own, finds that on some or all of those issues, there is no federal right to a jury trial."  Controlling Ninth Circuit authority holds that there is no right to a jury trial for fiduciary breach claims brought under ERISA § 502. *In re First Am. Corp. ERISA Litig.*, 2009 U.S. Dist. LEXIS 19262, at *4 (C.D. Cal. Feb. 9, 2009) (citations omitted); *see also Thomas v. Oregon Fruit Prods. Co.,* 228 F.3d 991, 996 (9th Cir. 2000) (collecting cases for the proposition that there is no right to a jury trial for claims "by participants and beneficiaries seeking remedies under [ERISA] section 502").  District Courts apply this well-established principle equally to class actions alleging fiduciary mismanagement of defined contribution plans. *See In re Sutter Health ERISA Litig.*, 2023 U.S. Dist. LEXIS 22659, at *39-40 (E.D. Cal. Feb. 9, 2023).  Thus, the Court must strike Plaintiffs' jury demand.

## VI.    CONCLUSION.

For the foregoing reasons, the Court should dismiss the FAC with prejudice.  Alternatively, the Court should strike Plaintiffs' jury demand.

Dated:  April 15, 2024                                          JACKSON LEWIS P.C.

By:     /s/ René E. Thorne
            Donald P. Sullivan
            René E. Thorn
            Attorneys for Defendants